Argued September 8, affirmed December 14, 1972

STEARNS, *Respondent, v.* MATHEWS ET AL,
*Respondents,* PAULSON, *Appellant.*

504 P2d 105

*Robert N. Gygi,* Portland, argued the cause and filed briefs for appellant.

*John C. Anicker, Jr.,* Oregon City, argued the cause and filed a brief for respondent Stearns.

*William E. Hanson,* Portland, argued the cause for respondents Mathews. With him on the brief were Dardano, Mowry & Hanson and David W. Dardano, Portland.

Before O'Connell, Chief Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

DENECKE, J.

Plaintiff brought this quiet title suit to establish the priority of her interest in property she purchased from the defendants Mathews over an asserted mortgage lien claimed by the defendant Paulson. The trial court found for plaintiff and Paulson appeals.

The transaction was extremely involved; however, many of the complexities can be bypassed.

The defendants Mathews' son entered into an agreement with Garden Miracles to purchase a distributorship for a patented draft beer dispenser and to buy 160 dispensers for a total of $55,200.

The sales agreement provided:

"2. Buyer hereby agrees to purchase 160 Beer Boy dispensers at a price of $345.00 each, making a total of $55,200.00. Garden Miracles, Inc. hereby acknowledges receipt of a one hundred and ten day note in the amount of $55,200.00 secured by a mortgage in the same amount, said note being signed by the Buyer and the Buyer's parents, Thomas J. Mathews and Hallie C. Mathews, for deposit on the distributorship for the State of Texas and for payment of 160 Beer Boy dispensers. Said deposit amounts to 100% of the purchase price of said 160 Beer Boy dispensers.

"Upon delivery of one or more dispensers, the Buyer is to immediately pay for them at the price of $345.00 which said amount shall be deducted from

the balance due on the note referred to herein until such time as the entire note is paid.

"In the event Buyer fails to make payment of the note, as required, or for each dispenser or dispensers as they are delivered, then the Seller may declare the note due and payable and if necessary foreclosure upon the property retaining any amount obtained thereby as reimbursement to the Seller for expenses and damages."

The son and the defendant Mathews executed a promissory note in the sum of $55,200, payable to Garden Miracles. The Mathews also executed a mortgage to Garden Miracles to secure the payment.

Paulson is the holder of the note and mortgage. He does not claim to be and is not a holder in due course.

■ It is admitted that only 46 dispensers were delivered and those were paid for in full. Garden Miracles and its successor corporation have dissolved and there is no evidence that any more dispensers can be delivered.

Paulson contends "the mortgage was given to secure a note and a distributorship which had continuing obligations, only a part of which was the purchase of products." We interpret the documents differently. The amount of the note, $55,200, precisely equals the price to be paid for the 160 dispensers which were to be purchased and the agreement provides that payment for all the dispensers would be payment of the $55,200. Since all the dispensers delivered have been paid for, there is nothing due on the note.

■ Even if there were a possibility that more dispensers would be delivered, Paulson can have no lien at the present time because no money is owing. The situation is comparable to a mortgage to secure past

and future advances. The mortgage is a lien only to the extent of the amount of the moneys already advanced and unpaid. *Hendrix v. Gore,* 8 Or 407, 410 (1880); *Backhaus v. Buells,* 43 Or 558, 571, 72 P 976, 73 P 342 (1903); *Rutherford v. Eyre & Co.,* 174 Or 162, 169, 148 P2d 530 (1944).

We find, as did the trial court, that the plaintiff takes the property free of any mortgage lien by Paulson.[1]

Affirmed.

---

[1] Paulson raised other issues, both procedural and substantive, however, because of our holding, any error so asserted cannot be prejudicial.